## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MICHAEL FLASH,
  *Plaintiff*,

  v.            No. 3:24-cv-01965 (VAB)

STATE OF CONNECTICUT, *et al*,
  *Defendants*.

## RULING AND ORDER ON MOTION TO DISMISS

Michael Flash ("Mr. Flash" or "Plaintiff") has brought suit against the State of

Connecticut, Judge Matthew Budzik, Judge Mark Taylor, Judge Claudia Baio, and Judge Neeta

Vatti, Superior Court Clerk Katherine Callis, and the Connecticut Superior Court (collectively

"State Defendants"); Milford Law, LLC, Paul Lewis Otzel, Barton Gilman, LLC, and Vicent J.

Averaimo (collectively "Milford Law Defendants")[1]; and Neubert, Pepe & Monteith, P.C.;

Claudia Sklar; and Wilmington Savings Fund Society, FSB as Owner Trustee of Residential

Credit Opportunities Trust V-D (collectively "Wilmington Savings Defendants") for allegedly

depriving him of his Fourth, Fifth, and Seventh Amendment Rights in violation of 42 U.S.C. §

1983. *See* Compl. at 2 ("This case is brought to enforce constitutional rights under 42 U.S.C. §

1983, conspiracy statutes under Federal Law").[2]

All Defendants have moved—across three separate motions—to dismiss the Complaint in

its entirety under Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter

---

[1] Paul Lewis Otzel and Vincent Averaimo, are partners in the firm of Barton Gilman, LLP, which has merged with Milford Law, LLC. Milford MTD at 1.
[2] The Court reads "conspiracy statutes" to mean 42 U.S.C. § 1985, creating liability when "two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."

jurisdiction, and under 12(b)(6) for failure to state a claim upon which relief can be granted. *See* State Defs. Mot. to Dismiss, ECF No. 30 (April 7, 2024), State Mem. in Support, ECF No. 30-1 (April 7, 2025) ("State MTD."); Milford Law Defs. Mot. to Dismiss, ECF No. 31 (April 7, 2024), Milford Law Defendants Mem. in Support, ECF No, 31-1 (April 7, 2025) ("Milford MTD"); Wilmington Savings Defs. Mot. to Dismiss, EF No. 34 (April 8, 2025), Wilmington Savings Mem. in Support, ECF No. 34-1 (April 8, 2024) ("Wilmington Savings MTD"). The Wilmington Savings Defendants additionally moved to dismiss the Complaint under Federal Rules of Civil Procedure 8(a)(2) and 8(d)(1).

For the following reasons, the motions to dismiss are **GRANTED**. All other pending motions in this case are therefore **DENIED as moot**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations[3]

On June 9, 2021, Neubert, Pepe & Monteith, P.C. and Paul Lewis Otzel Barton Gilman, LLP allegedly filed a foreclosure action entitled *Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportuntieis Trust V-D vs. Barley, Sandra A., a/k/a Sangra Bartely et al*, Case No. HHD-CV21-6143209-S, in Connecticut Superior Court, Judicial District of Hartford. *See* ¶ 10.

This suit is allegedly part of "an intricate and longstanding interconnected web of RICO [Racketeer Included and Corrupt Organizations Act]" which was allegedly implemented intentionally to defraud "the United States, the State of Connecticut, the impoverished, the self-represented, the uneducated, [and] the disabled . . . ." ¶ 11. In connection with this suit, Mr. Flash

---

[3] The following allegations are taken from the Complaint.

allegedly uncovered a series of illegal and unconstitutional actions on the part of Wilmington Savings Defendants and their lawyers. *See* ¶ 13.

These allegedly illegal actions include Lucky's Home Improvement LLC allegedly improperly intervening in the case as they did not have standing to sue, *see* ¶ 16; attorneys allegedly making materially false statements related to the breach of mortgage and breach of contract, *see* ¶ 17; laws firms and Wilmington Savings allegedly committing "piracy" through their "seizure of substance" against Mr. Flash, *see* ¶ 18; the Clerk of the Superior Court improperly entering an appearance on behalf of the plaintiffs in Wilmington, *see* ¶ 19; State Defendants entering into a conspiracy with plaintiffs and law firms in Case No. HHD-CV21-614209-S to deprive him of his Fourth and Fifth Amendment Rights, *see* ¶¶ 30–34; and the State Defendants breaching their "implied covenant of good faith and fair dealing" when entering orders in Case No. Case No. HHD-CV21-6143209-S, *see* ¶¶ 35–40.[4]

In all, Mr. Flash identifies twelve alleged "grounds" by which Defendants violated his constitutional rights—including his Fourth, Fifth, and Seventh Amendment Rights—in violation of 42 U.S.C. § 1983 through their actions in the "unlawful" foreclosure. *See* ¶¶ 20–42. Mr. Flash alleges that Defendants' actions in Case No. HHD-CV21-6143209-S caused him financial and emotion injuries ¶ 34–36, entitling him to $250 million in compensatory and punitive damages, ¶ 37.[5]  His calculation is based on alleged "legal expenses, medical bills, mental anguish associated with living with the consequences of the defendant's negligence, loss of income, and

---

[4] In the Complaint, after paragraph 40, the numbering restarts at 30.
[5] The Complaint incorporates a copy of the docket in Connecticut Superior Case No. HHD-CV21-6143209-S, attached as "Ex. G." *See* Compl. Ex. G at 29–38, ECF No. 1-2 (Dec. 10, 2024) (Connecticut Superior Case No. HHD-CV21-6143209-S Docket ("Compl. Ex. G"); *see also Musciotto v. Nardelli*, No. 3:19-CV-559 (KAD), 2019 WL 5086691, at *2 (Oct. 10, 2019) ("In deciding a motion to dismiss, the Court may take judicial notice of public records such as pleadings, orders, judgments, and other documents from prior litigation, including state court cases." (citations omitted))

damaged credit score, embarrassment from having plaintiff's house listed on Zillow and other

Real estate foreclosure websites before while the case is in litigation," as well as punitive

damages. Compl. at 34.

### B.  Procedural History[6]

On December 10, 2024, Mr. Flash filed this Complaint *pro se*. Compl.

On April 7, 2025, the State Defendants filed a motion to dismiss and companying

memorandum. State MTD.

That same day, the Milford Law Defendants filed a motion to dismiss and accompanying

memorandum. Milford MTD.

On April 8, 2025, the Wilmington Savings Defendants filed a motion to dismiss and

accompanying memorandum. Wilmington Savings MTD.

On April 9, 2025, the State Defendants filed a motion to stay Rule 26 requirements,

including discovery. State Defs. Mot. to Stay, ECF No. 35 (April 9, 2025).

On April 16, 2025, Mr. Flash filed an opposition to the Wilmington Savings Defendants'

motion to dismiss, Pl.'s Opp. Mot. to Dismiss, ECF No. 39 (April 16, 2025) ("Opp. to

Wilmington Savings MTD"); an opposition to the Milford Law Defendants' motion to dismiss.

Pl's Opp. Mot. to Dismiss, EFC No. 40 (April 16, 2025) ("Opp. to Milford MTD"); and an

opposition to the State Defendants' motion to dismiss. Pl.'s Opp. to Mot. to Dismiss, ECF No 41

(April 16, 2025) ("Opp. to State MTD").

---

[6] The summary below recounts the procedural history as directly relevant to these motions to dismiss. Mr. Flash has filed numerous motions, however, unrelated to these motions. *See e.g.,* Mot. for Writ, ECF No. 2 (Dec. 10, 2024); Mot. for Emergency Hearing, ECF No. 3 (Dec. 10, 2024); Mot. to Strike, ECF No. 37 (April 16, 2025); Mot. for Writ Mandamus, ECF No. 55 (June 16, 2025); Pet. for Forensic Audit, ECF No 56 (June 27, 2025); Pet. for Writ of Habeas Corpus, ECF No. 66 (Aug. 2025). The Court exercises its discretion to first resolve the dispositive motions to dismiss. *See Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

On April 18, 2025, the Milford Law Defendants moved to stay discovery until after this Court ruled on the pending motions to dismiss. Milford Law Mot. to Stay, ECF No. 53 (April 18, 2025).

On April 23, 2025, Mr. Flash filed an objection to the motions to stay and a memorandum in opposition to the motion to stay discovery. Obj. Mot, to Stay, ECF. No. 44 (April 23, 2025); Opp. to Mot. to Stay, ECF No. 45 (April 23, 2025).

On May 2, 2025, State Defendants filed a response to Mr. Flash's opposition to the motion to dismiss. State Defs' Resp., ECF No. 46 (May 2, 2025).

On May 7, 2025, Mr. Flash filed a reply to State Defendants' response to the opposition to motion to dismiss. Reply to Resp., ECF No. 50 (May 7, 2025) ("Reply").

On July 16, 2025, the Court granted Defendants' motion to stay discovery and Rule 26 requirements. Order Granting Mot. to Stay, ECF No. 56 (July 16, 2025).

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *See id.*

"When considering a motion to dismiss [under] Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006). The court, however, may also resolve disputed jurisdictional issues "by

referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

"When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint . . . , the plaintiff has no evidentiary burden." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016). "[A] defendant is [also] permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the [p]leading." *Id.* "In opposition to such a motion, the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).

## B. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### C. *Pro Se* Filings

*Pro se* filings "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting

*Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants). While *pro se* complaints must be construed "liberally" and "read to raise the strongest arguments they suggest," the Court cannot "read into *pro se* submissions claims that are not consistent with the pro se litigant's allegations." *Triestman*, 470 F.3d at 476 (internal quotation marks omitted).

## III.    DISCUSSION

Because federal courts are courts of limited jurisdiction, "[c]ustomarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case." *Cantor Fitzgerald, L.P., v. Peaslee*, 88 F.3d 152, 155 (2d Cir. 1996); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) ("[T]he court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." (citing 5 Wright & Miller's Federal Practice and Procedure § 1350, 548 (1969))). As a result, this Court will first address its subject matter jurisdiction to adjudicate this matter, before turning to the merits of the claims.

As a general matter, federal courts may not decline to exercise jurisdiction where it has properly been asserted by a plaintiff. *See Sprint Commc'ns v. Jacobs*, 571 U.S. 69, 77 (2013) ("Federal courts, it was early and famously said, have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given.' Jurisdiction existing, this Court has cautioned, a federal court's 'obligation' to hear and decide a case is 'virtually unflagging.'" (quoting *Cohens v. Virginia*, 19 U.S. 264, 404 (1821); *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976))).

But the Supreme Court has nevertheless recognized several doctrines of equitable abstention that may, in rare circumstances, permit federal courts to abstain from jurisdiction. *See New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989) ("[T]here are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do.' We have carefully defined, however, the areas in which such 'abstention' is permissible[.]" (quoting *Younger v. Harris*, 401 U.S. 37, 45 (1971); *Colo. River*, 424 U.S. at 813 ("Abstention from the exercise of federal jurisdiction is the exception, not the rule."))).

The Court will first address Defendants' arguments to dismiss Mr. Flash's claims under 12(b)(1) based on the *Rooker-Feldman* doctrine. *See* State MTD at 13–15[7]; Milford MTD at 5–6; Wilmington Savings MTD 5–7, and turn to, if necessary or otherwise warranted, the doctrines of sovereign and judicial immunity.

### A. *Rooker-Feldman* Doctrine

"Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over cases that essentially amount to appeals of state court judgments." *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (per curiam). "The *Rooker-Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment. Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d Cir. 1998).

---

[7] Where the internal pagination conflicts with the ECF-generated pagination, this Ruling and Order shall refer to the ECF-generated pagination.

"The *Rooker-Feldman* doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries causes by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). Under the *Rooker-Feldman* doctrine, "federal district courts do not have jurisdiction over claims that have already been decided, or that are 'inextricably intertwined' with issues that have already been decided, by a state court." *Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004).

Specifically, the *Rooker-Feldman* doctrine "directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010). Under the doctrine, "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature." *Gentner v. Shulman*, 55 F.3d 87, 89 (2d Cir. 1995)

The *Rooker-Feldman* doctrine applies to foreclosure actions in the Second Circuit. *See, e.g.*, *U.S. Bank, Nat'l Ass'n as Tr. for Bear Stearns Asset Backed Sec. I Tr. 2006-AC1, Asset-Backed Certificates, Series 2006-AC1 v. Profeta*, No. 3:18-cv-1710 (CSH), 2019 WL 2185725, at *6 (D. Conn. Mar. 26, 2019) ("[T]he Second Circuit has held that district courts lack jurisdiction over completed foreclosure actions, as well as collateral attacks upon them, on jurisdictional grounds based on the abstention doctrine set forth in [*Rooker*]." (citing, *inter alia, Vossbrinck*, 773 F.3d at 427)).

The Court, however, "must engage in a case-by-case determination of the applicability of the *Rooker-Feldman* doctrine, even in a case concerning a foreclosure." *Tanasi v. CitiMortgage, Inc.*, 257 F. Supp. 3d 232, 250 (D. Conn. 2017) (internal citation and quotation marks omitted). Here, the first, fourth, and second prongs of the test are met. Mr. Flash lost in state court, *see* Compl. Ex. G at 29–38, ECF No. 1-2 (Dec. 10, 2024) (Connecticut Superior Case No. HHD-CV21-6143209-S Docket); the case concluded before Mr. Flash's federal case was filed, *id.*; and Mr. Flash complains of injuries caused by the state court judgment, *see* Compl. at 34 ("Plaintiff request[s] compensatory and general damaged for legal expenses, medical bills, mental anguish associated with living with the consequences of the defendant's negligence, loss of income, and damaged credit score, embarrassment from having plaintiff's house listed on Zillow and other Real estate foreclosure websites before while the case is in litigation."); *id.* at 35 ("The injury is done to us in our person, property, and reputation. We have also suffered intense anxiety attacks with a loss of sleep. When we do not sleep and/or we are intensely fatigued, due to the fact we are under Mental Torture due to Malicious Prosecution/Vexatious Litigation by the action of attorneys and Judges.").

Parties dispute, however, whether the third factor applies—that is, whether Mr. Flash's case "invites district court review of that judgment." *McKithen*, 626 F.3d at 154.

Defendants argue that Mr. Flash is attacking the outcome of a state foreclosure proceeding, and this case falls squarely within the *Rooker-Feldman* doctrine. *See* State MTD at 13–15; Milford MTD at 5–6; Wilmington Savings MTD 5–7.

In his reply to the State Defendants' response, Mr. Flash argues that he is not seeking review of the foreclosure judgment but is, instead, challenges Defendants' "procedural

violations." Reply at 3. He argues that *Rooker-Feldman* is inapplicable to "independent due process violations under the Fourteenth Amendment[.]" *Id.*

The Court disagrees.

To the extent that Mr. Flash seeks damages because the foreclosure judgment was obtained fraudulently or improperly, *Rooker-Feldman* bars his claim. *See Vossbrinck*, 773 F.3d at 427 ("To the extent Vossbrinck asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars Vossbrinck's claim."). Mr. Flash "is asking the federal court to determine whether the state judgment was wrongfully issued in favor of parties who, contrary to their representations to the court, lacked standing to foreclose. This would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error." *Id.*

Mr. Flash also seeks damages for the harm allegedly caused by the Defendants' various actions in his foreclosure case, and asks this Court to declare the judgment "null and void." *See* Compl. at ¶¶ 29–30[8] ("If a court rules on a case without subject matter jurisdiction, its judgment is null and void . . . . The notice of challenge to state Court Jurisdiction for lack of subject-matter jurisdiction that the Law Firm as the Alleged plaintiff, is Null and Void and lacks the standing to execute and deliver due to lack of evidence as claims to a party of interest . . . .The pleadings filed in this case were not sufficient to invoke the Court's authority to act.")). *Cf. Vossbrinck*, 773 F.3d at 427 ("This is evident from the relief Vossbrinck requests—title to and tender of his property and, in his brief on appeal, to have the state judgment declared "void." (citing *Exxon Mobil*, 544 U.S. at 293 (*Rooker–Feldman's* "paradigm situation" is where the plaintiff has "repaired to federal court to undo the [state] judgment"))).

---

[8] Paragraph 29 is located on page 19 of the Complaint, and paragraph 30 is located on page 24.

As to Mr. Flash's alleged "independent due process violations," Reply at 3, to have a viable claim, he would need to be alleging claims distinct from the harms from Defendants' actions during a state court proceeding. For example, "[c]laims seeking damages for defendants' alleged fraud or deceptive debt collections, [which] do not require a federal court to sit in review of a state court judgment of foreclosure," *Williams v. Countrywide Bank et al*, No. 3:18-cv-2007 (VAB), 2020 WL 4059883, *9 (D. Conn. July 19, 2020), can be analyzed independent of state court foreclosure judgments. *See id.*

But, when a plaintiff—as Mr. Flash has done here—instead "alleges that Defendants engaged in fraud during the foreclosure action by (1) misrepresenting that they had standing to seek foreclosure, when in fact [Defendant] was not the holder of [the] note and mortgage when the foreclosure action was initiated, and [the] Bank lacked standing to enter as substitute plaintiff; and (2) submitting fraudulent title documents in the state action," *Rooker-Feldman* bars the plaintiff's claim. *Vossbrinck*, 773 F.3d at 427 ("To the extent Vossbrinck asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker–Feldman* bars Vossbrinck's claim."); *see also Astoria Fed. Savings & Loan Ass'n v. Arcamore*, 3:12-cv-230 (WWE), 2012 WL 4355550, at *2 (D. Conn. Sept. 18, 2012) ("Even where a plaintiff alleges that a state court judgment was procured by fraud, *Rooker-Feldman* will divest the federal court of jurisdiction." (citing *Done v. Wells Fargo Bank, N.A.,* No. 08-CV-3040 (JFB)(ETB), 2009 WL 2959619, *3 n. 6 (E.D.N.Y. Sept. 14, 2009))); *Gonzalez v. Deutsch Bank Nat. Trust Co.*, 632 Fed. App'x 32, 33–34 (2d Cir. 2016) (Mem) (summary order) ("Thus, insofar as plaintiffs here (1) contend that Deutsche Bank (a) lacked standing to pursue their home's foreclosure in state court, or (b) fraudulently obtained title to the home; or (2) seek to recover for injuries caused by the state judgment, their claims are barred because the

validity of the foreclosure was already fully adjudicated in the state-court proceeding." (citations omitted)).

Mr. Flash's claim thus fits squarely within *Rooker-Feldman*'s bar on "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejecting of those judgments." *Exxon Mobil Corp.*, 544 U.S. at 284; *Wilson v. HSBC Bank, USA* 834 Fed. App'x 607, 609 (2d Cir. 2020) (summary order) (applying *Rooker-Feldman* when "the district court would have to determine that the state court entered its judgment in error" to resolve a *pro se* suit challenging a foreclosure).

Accordingly, the *Rooker-Feldman* doctrine precludes consideration of Mr. Flash's claims for relief, and the Court need not consider other arguments in favor of dismissal. *See Pupovic v. Diamond Tucker St. Property, LLC*, No. 3:24-cv-1969 (VAB), 2025 WL 1424944, at *3 (D. Conn. May 16, 2025) (citing *Vossbrinck* and declining to review additional arguments when the Court determined it lacked subject matter jurisdiction); *Lavigne v. Rodriguez*, No. 3:19-CV-1576 (VAB), 2020 WL 5749931, at *4–6 (D. Conn. Sept. 25, 2020) (same); *see also Cunha v. Moukawsher*, No. 3:23-cv-37 (VAB), 2024 WL 152608, *7 (Jan. 15, 2024) (same).

## B. Sovereign Immunity

While *Rooker-Feldman* would be sufficient to dismiss Mr. Flash's Complaint entirely for lack of subject matter jurisdiction under Rule 12(b)(1), there are further jurisdictional issues regarding certain Defendants, including those affiliated with the Connecticut Superior Court.

Under the Eleventh Amendment, "a federal court c[an] not entertain a suit brought by a citizen against his own state." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984). "This jurisdictional bar also immunizes a state entity that is an arm of the state,

including, in appropriate circumstances, a state official acting in his or her official capacity." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).

Under *Ex parte Young*, 209 U.S. 123 (1908), however, "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law." *In re Deposit Ins. Agency*, 482 F.3d at 617. To bring an *Ex parte Young* claim, a plaintiff must allege an "ongoing violation of federal law" and request "relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002).

Mr. Flash argues that the State Defendants have waived sovereign immunity under the Tucker Act, 28 U.S.C. § 1491. *See* Reply at 5–6 ("The Tucker Act exposes the government to liability for certain claims.").

The State Defendants argue that all claims against the State and Superior Court should be dismissed under the Eleventh Amendment, and that the Tucker Act does not apply because it waives sovereign immunity for certain claims against the United States brought in the United States Court of Federal Claims. State MTD at 9. As to the official capacity claims against the Judges and the Clerk of the Superior Court, State Defendants argue that *Ex parte Young* does not apply because Mr. Flash alleged no ongoing violation of his constitutional rights. *Id.* (citing *In re Deposit Ins. Agency*, 482 F.3d at 618; *Emerick v. Connecticut*, No. 3:18-cv-01766 (SRU), 2020 WL 1083627, at *6 (D. Conn. Mar. 6, 2020) ("the Ex Parte Young exception is narrow")).

The Court agrees.

To the extent that Mr. Flash requests relief from the State and the Superior Court under Section 1983 or *Ex parte Young*, all claims against these state departments are barred by sovereign immunity. *See, e.g.*, *Dube v. State of University of New York*, 900 F.2d 587, 594 (2d

Cir. 1990) ("[S]ince [plaintiff's] federal causes of action are brought under section 1983, 'in the absence of consent, any claims against the State or one of its agencies or departments are proscribed by the Eleventh Amendment.'" (quoting *Pennhurst*, 465 U.S. at 100) (cleaned up)); *Mallison v. Conn. Office of Early Childhood*, 657 F. Supp. 3d 221, 233 (D. Conn. 2023) ("First, Plaintiff seeks this injunction directly against the OEC and not against any individual defendant. This alone defeats his argument that *Ex parte Young* allows the relief sought."); *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) ("The doctrine of *Ex parte Young* ... has no application in suits against the States and their agencies, which are barred regardless of the relief sought[.]").

The Tucker Act, in contrast, waives sovereign immunity for "non-tort claims 'against the United States ... founded ... upon any express or implied contract with the United States.'" *C.H. Sanders Co., Inc. v. BHAP Housing Dev. Fund Co., Inc.*, 903 F.2d 114, 119 (2d Cir. 1990) (quoting 28 U.S.C. § 1346(a)(2)). "The Tucker Act confers jurisdiction over such claims upon the Court of Claims." *Adeleke v. U.S.*, 355 F.3d 144, 151–52 (2d Cir. 2004). As Mr. Flash alleges a 1983 Claim against State government Defendants, the Tucker Act does not apply.

Furthermore, to the extent that Mr. Flash requests monetary relief for past harms under Section 1983 from Judges and the Clerk of the Superior Court acting in their official capacities, these claims are barred by sovereign immunity. *See Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007) ("In addition to preventing suits against a state, sovereign immunity also extends to bar claims for monetary damages brought against state officers sued under section 1983 in their official capacities."). And, to the extent that Mr. Flash requests some kind of injunctive relief from State Defendants related to the outcome of his foreclosure case, he is seeking relief for past harms and has not alleged any "ongoing violation of federal law"

necessary for bringing an *Ex parte Young* claim. *State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d. Cir. 2007) (quoting *Verizon Maryland, Inc.*, 535 U.S. at 645); *see, e.g.*, *Mallison*, 657 F. Supp. at 233 (dismissing a claim when "[i]t is clear that this allegation relates to an event that took place in the past, and not ongoing conduct").

Accordingly, the State Defendants are also protected by sovereign immunity, and all claims under Section 1983 against the State, Superior Court, or individual State Defendants in their official capacities, will be dismissed with prejudice, and any claim seeking injunctive relief based on previous convictions will be dismissed with prejudice. *See cf.*, *Glover v. State Univ. of N.Y. at Buffalo*, No. 08CV418, 2009 WL 857514, at *3 (W.D.N.Y. Mar. 27, 2009) ("Plaintiff's amendment here would be futile given the Eleventh Amendment immunity enjoyed by defendant. In addition, this proposed amendment does not address the fatal flaw in plaintiff's Complaint, the immunity enjoyed by defendant under the Eleventh Amendment. Plaintiff fails to cure this significant deficiency by this amendment, if any amendment can obviate the Eleventh Amendment immunity plaintiff faces in commencing this action against SUNY.").

### C.  Judicial Immunity

To the extent that Mr. Flash's claims against Judge Budzik, Judge Taylor, Claudia Baio, and Judge Vatti, and Superior Court Clerk Callis are in their individual capacities, they are also barred by judicial immunity.

The doctrine of judicial immunity protects judges from suits seeking money damages unless "(1) the actions giving rise to the suit were not taken in the judge's judicial capacity, or (2) the suit arises from actions taken by the judge in the complete absence of jurisdiction." *Parmlee v. State Dep't of Revenue Servs.*, No. 3:98-cv-2021 (AHN), 1999 WL 305476, at *3 (D. Conn. Apr. 13, 1999). The Second Circuit has stated:

Since the seventeenth century, the common law has immunized judges from damage claims arising out of their judicial acts. This doctrine was embraced by the Supreme Court in 1872 in *Bradley v. Fisher*[.] *Bradley* established as a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself ... The cloak of immunity is not pierced by allegations of bad faith or malice, even though unfairness and injustice to a litigant may result on occasion ... The Supreme Court has repeatedly reaffirmed these principles.

*Tucker v. Outwater*, 118 F.3d 930, 932–32 (2d Cir. 1997) (quotations and citations omitted). As a result "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority, but rather he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction,'" *Stump v. Sparkman*, 435 U.S. 349, 349 (1978) (citing *Bradley*, 80 U.S. 335, 336 (1821)). Absolute immunity extends to nonjudicial officers, such as the Clerk of the Court, who performs acts that "are integrally related to an ongoing judicial proceeding." *Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, No. 3:17-cv-2164 (MPS), 2018 WL 2138631, at *2 (May 9, 2018) ("Clerk of Court Karen Rushing . . . [is] also immune from suit based on Ms. Chmura's allegations that Rushing entered writs of execution and Knight completed a Sheriff's sale as part of the foreclosure proceedings. Absolute immunity extends to nonjudicial officers who perform acts that 'are integrally related to an ongoing judicial proceeding.'" (citing *Mitchell v. Fishbein*, 377 F.3d 157, 172-73 (2d Cir. 2004))).

The individual State Defendants argue that absolute judicial immunity protects them from Mr. Flash's claims because they were entering judicial orders and attorney appearances in a foreclosure action in their official judicial or quasi-judicial capacities. *See* State MTD at 10–12.

Ms. Flash argues the Judges and Clerk were acting without jurisdiction and are therefore not entitled to judicial immunity. Reply at 23–24.

The Court disagrees.

Here, Mr. Flash's own allegations indicate that Judge Budzik, Judge Taylor, Judge Baio, and Judge Vatti presided over—or, in Ms. Callis's case, entered orders in—a legal action brought before them in their capacities as employees of the State of Connecticut Superior Court. *See* Compl. at 35 ("Malicious Prosecution / Vexatious Litigation in a wrongful foreclosure action. The injury is done to us in our person, property, and reputation. . . . When we do not sleep and/or are intensely fatigued, due to the fact we are under Mental Torture due to Malicious Prosecution /Vexatious Litigation by the action of attorneys and Judges."). These various orders entered by the Judges as part of the foreclosure action are "function[s] normally performed by a judge[.]" *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (per curiam). The Docket for Case No. HHD-CV21-614209-S—compiling the orders and filings in the foreclosure case, *see* Compl. Ex. G—underscores that the individual State Defendants were serving in their judicial or quasi-judicial capacities when signing and docketing orders in that case. *See Frascatore v. Wilmington Savings Fund*, No. 3:22-cv-00212 (VAB), 2022 WL 16716169, at *6 (finding that a document "with all of the attributes of a judicial document" supported the argument that a State Judge was performing a judicial function in signing a Foreclosure Order).

Mr. Flash's allegations "do nothing to pierce the immunity afforded" to judicial officers acting in their official capacities. *Patterson*, 708 F. Supp. 2d 225, 236 (D. Conn. 2010). Even drawing all inferences in Mr. Flash's favor—as this Court must at this stage of the case—and assuming that the Judges in this case "lack[ed] subject matter jurisdiction . . . [and] the legal authority to rule," *see* Compl. at ¶ 29, when they signed and entered judicial orders, *see id.* at ¶¶ 34–40, Mr. Flash's allegations against the Judges and Clerk fail, as a matter of law, because as the U.S. Supreme Court has long recognized, "[j]udges of courts of record of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess

of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley, 80 U.S. at 336.*

While it is true that a judge "will be subject to liability ... when he has acted in the 'clear absence of all jurisdiction[,]'" *Stump*, 435 U.S. at 357 (quoting *Bradley*, 80 U.S. at 351), that is not the case here. The Connecticut Superior Court "is a court of general jurisdiction." *Carten v. Carten*, 219 A.2d 711, 716 (Conn. 1966). *See also* Conn. Gen. Stat. Ann. § 51-164s ("The Superior Court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute."). The Connecticut Superior Court, "has jurisdiction of all matters expressly committed to it, and of all other matters cognizable by any law court of which the exclusive jurisdiction is not given to some other court." *Carten*, 219 A.2d at 716 (quotation marks and citation omitted). Thus, "[t]here is no question that the Superior Court is authorized to hear foreclosure cases[,]" such as the Foreclosure Action at issue in Mr. Flash's Complaint. *MTGLQ Invs., L.P. v. Hammons*, 230 A.3d 882, 886 (Conn. App. 2020), *cert. denied*, 238 A.3d 21 (Mem.) (2020), *overruled on other grounds, KeyBank, N.A. v. Yazar*, 297 A.3d 968, 977 (Conn. 2023).

As a result, there is no legal basis for claiming that Judge Budzik, Judge Taylor, Judge Baio, and Judge Vatti, and Superior Court Clerk Callis acted "in the clear absence of all jurisdiction[,]" when they entered orders and filings in Case No. HHD-CV21-614209-S. *Stump*, 435 U.S. at 357 (quoting *Bradley*, 80 U.S. at 351).

Accordingly, even if *Rooker-Feldman* and Eleventh Amendment immunity did not apply, any claims against Judge Budzik, Judge Taylor, Judge Baio, and Judge Vatti, and Superior Court Clerk Callis must be dismissed under the doctrine of judicial immunity.

**IV.     CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are **GRANTED.**

Accordingly, all other pending motions, ECF Nos. 2, 3, 16, 17, 35, 36, 37, 38, 51, 55, 61,

62 are **DENIED as moot**.

The Clerk of Court is respectfully directed to enter judgment for all of the Defendants,

and to close this case.

**SO ORDERED** at New Haven, Connecticut, this 12th day of September, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE